UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BYRON MCCLENDON,

               Petitioner,

v.                                              Case No. 3:17-cv-1351-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

               Respondents.

_____

**ORDER**

**I. Status**

      Petitioner Byron McClendon, an inmate of the Florida penal system, initiated this action on December 4, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, McClendon challenges a 2007 state court (Duval County, Florida) judgment of conviction for trafficking in excess of twenty-eight grams (while possessing a firearm), possession of more than twenty grams of cannabis (while carrying, displaying, using or threatening to use a firearm), and possession of a controlled substance. He raises five grounds for relief. See Petition at 5-18.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer in Response to Order to Show Cause (Response; Doc. 21). They also submitted exhibits. See Resp. Exs. A-S, Docs. 21-1 through 21-21. McClendon filed a brief in reply. See Petitioner's Reply to Response (Doc. 24). This case is ripe for review.

---

      [1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

      [2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On December 14, 2006, the State of Florida charged McClendon, by Amended Information in Duval County case number 16-2006-CF-004620-AXXX-MA, with trafficking in cocaine while armed with a firearm (count one), possession of more than twenty grams of cannabis while armed with a firearm (count two), possession of a controlled substance (count three), carrying a concealed firearm (count four), possession of controlled substance paraphernalia (count five), and resisting an officer without violence (count six). See Resp. Ex. A at 41-42. At the conclusion of a trial on counts one through four, a jury found McClendon guilty as to counts one through three, and not guilty as to count four.[3] See Resp. Exs. A at 123-26, Verdicts; C, Transcript of the Trial Proceedings (Tr.), at 585-86.[4] The circuit court sentenced McClendon to a term of imprisonment of thirty years with a ten-year minimum mandatory sentence for count one, fifteen years for count two, and five years for count three. See Resp. Exs. A at 138-45, Judgment; D, Transcript of the Sentencing Proceeding (Sentencing Tr.). McClendon filed a pro se motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(b)(2), see Resp. Ex. E, and the court denied the motion on October 17, 2007, see Resp. Ex. F.

On appeal, McClendon, with the benefit of counsel, filed an initial brief, arguing that (1) the trial court erred when it admitted evidence of McClendon's statements that he had a gun and fifty rounds of ammunition; (2) the trial court fundamentally erred when it

---

[3] The State nolle prossed counts five and six. See Resp. Ex. A at 147, State of Florida Uniform Commitment to Custody, Department of Corrections, Fourth Judicial Circuit Court, Duval County, dated May 10, 2007; see also https://core.duvalclerk.com, case no. 16-2006-CF-004620-AXXX-MA, docket entries 330, 331.

[4] The Court will cite the page number in the upper-righthand corner of the transcript.

instructed the jury on the law of constructive possession as it pertains to joint possession of the premises; and (3) his sentence violates due process because trafficking in and possession of controlled substances are strict liability offenses. See Resp. Ex. G. The State filed an Answer Brief, see Resp. Ex. H, and McClendon filed a Reply Brief, see Resp. Ex. I. On July 2, 2008, the appellate court affirmed McClendon's conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. J, and on September 18, 2008, denied McClendon's motion for written opinion and certification, see Resp. Ex. K. The mandate issued on October 6, 2008, see Resp. Ex. L.

McClendon filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850) on September 22, 2009. Resp. Ex. M at 1-64. He filed a motion to amend on October 14, 2010, see id. at 65, and an amended Rule 3.850 motion on July 11, 2012, see id. at 74-156. On May 12, 2016, the circuit court granted McClendon's motion to amend. See id. at 170-74. He filed a pro se second amended Rule 3.850 motion on September 16, 2016. See id. at 193-231. In his second amended request for post-conviction relief, McClendon asserted that counsel (Sissy Adams-Jones and Alphonse Perkins) [5] were ineffective because they failed to: (1) cross examine Vickie Renegar, a State witness, see id. at 195; (2) object and request that the court instruct the State and its witness not to disclose any familiarity with McClendon, see id. at 197; (3) request that the jury view the crime scene, see id. at 200; (4) object to the standard jury instruction when a special jury instruction on joint possession was needed, see id. at 203; (5) investigate, interview, and call Victoria Cain as a witness when she was willing and available to testify on McClendon's behalf, see id. at 210; (6) impeach the

---

[5] Perkins was co-counsel at the March 19-21, 2007 trial. See Tr. at 204.

testimony of Officer Bridgeman, see id. at 211; (7) file a motion to suppress the physical evidence, see id. at 214; and (8) object to prosecutorial misconduct, see id. at 216. The circuit court denied the second amended Rule 3.850 motion on November 18, 2016. See id. at 234-504. On appeal, McClendon filed a pro se brief,[6] see Resp. Ex. N, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. O. The appellate court affirmed the circuit court's denial of McClendon's second amended Rule 3.850 motion per curiam without issuing a written opinion on October 13, 2017, see Resp. Ex. P, and denied McClendon's motion for rehearing and/or written opinion, see Resp. Exs. Q; R. The mandate issued on December 19, 2017. Resp. Ex. S.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise

---

[6] On appeal, McClendon expressly waived grounds three, six, and eight. See Resp. Ex. N.

precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [McClendon's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

> Second, § 2254(d)(2) provides for federal review for claims of
> state courts' erroneous factual determinations. Section
> 2254(d)(2) allows federal courts to grant relief only if the state
> court's denial of the petitioner's claim "was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding." 28 U.S.C.
> § 2254(d)(2). The Supreme Court has not yet defined §
> 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which
> imposes a burden on the petitioner to rebut the state court's
> factual findings "by clear and convincing evidence." See Burt
> v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348
> (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct.
> 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise
> relationship" may be, "'a state-court factual determination is
> not unreasonable merely because the federal habeas court
> would have reached a different conclusion in the first
> instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting
> Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175
> L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the

7

state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052.  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."

Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part

Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not

address the performance prong if the petitioner cannot meet the prejudice prong, and

vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated

in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice, which we expect will often be so, that course should be followed."

Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The
> question is not whether a federal court believes the state
> court's determination under the Strickland standard was
> incorrect but whether that determination was unreasonable -
> a substantially higher threshold." Knowles v. Mirzayance, 556
> U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)
> (quotation marks omitted). If there is "any reasonable
> argument that counsel satisfied Strickland's deferential
> standard," then a federal court may not disturb a state-court
> decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at
> 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance,

556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's

performance mandated by Strickland, the AEDPA adds another layer of deference--this

one to a state court's decision--when we are considering whether to grant federal habeas

relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir.

2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Grounds One and Four

As ground one, McClendon asserts that counsel was ineffective because she failed to cross examine Vickie Renegar, who was willing to offer "critical information" related to McClendon's innocence. Petition at 5. He states that Renegar wrote a letter and gave it to defense counsel on May 10, 2007, after the trial judge had sentenced McClendon. <u>See id.</u> According to McClendon, Renegar's letter provided facts that refuted the State's argument that McClendon knew about the contraband because the cell phone pamphlet containing the number of the cell phone McClendon had used was found inside the bag with the contraband. <u>See id.</u> at 5-6. He maintains that Renegar's testimony (that McClendon was not the person on the cell phone with Renegar's daughter, Victoria Cain) would have supported a defense theory of misidentification. <u>See id.</u> at 6.

Additionally, as ground four, McClendon asserts that counsel was ineffective because she failed to investigate, interview, and call Victoria Cain as a defense witness. <u>See</u> Petition at 13-14. He states that Cain would have testified as follows:

> [S]he dropped [McClendon] off on Mark Avenue and that when he exited her car the only things [McClendon] was carrying [were] a Firehouse Subs cup and a Firehouse Subs bag. Further, Ms. Cain would have testified that she was not talking to [McClendon] on the telephone, and the person she was actually talking to was an individual that she knows as "D."

<u>Id.</u> According to McClendon, Cain's testimony would have "nullified" the State's argument that McClendon had used the cellphone to call Cain. <u>See id.</u> at 14.

McClendon raised these claims in his second amended Rule 3.850 motion in state court. Resp. Ex. M at 195-97, 210-11. The circuit court ultimately denied the post-conviction motion with respect to the claims, stating in pertinent part:

> Defendant argues counsel was ineffective for failing to cross-examine Vickie Renegar. Defendant notes that Ms. Renegar delivered a typed document to counsel on May 10, 2007,[7] in which Defendant claims there [are] sufficient facts counsel could have used to show Defendant's innocence had he[8] cross-examined Ms. Renegar on those topics at trial. Specifically, Defendant claims that Ms. Renegar would have been able to testify that she knew who was calling her daughter and that the caller's name was "D," an individual who was relaying what Defendant was saying to Ms. Renegar's daughter. This information, Defendant claims, would have demonstrated that, contrary to the State's contentions, Defendant had no knowledge of the contraband.

> Attached as Exhibits A and B to Defendant's Motion are two letters signed by Ms. Renegar,[9] in which she voices her concern over why counsel never raised the fact she was told that the man calling her daughter's phone number was named Donna, that she knew he used the phone that day to call her daughter, and that she had not seen or spoken to Defendant in three years except for a few seconds from far away. The record reflects that counsel did not cross-examine Ms. Renegar. (Ex. E at 431-32.)

> Assuming Ms. Renegar['s] statements in her letters are true, there is no reasonable probability the outcome of the trial would have been different had counsel elicited this information on cross-examination. The record reflects that Defendant had an outstanding warrant for his arrest and that officers responded to the scene based on a tip given by Ms. Renegar that Defendant was present at the house in question. (Ex. E at 210-13, 258-59, 299-300, 387-88, 466.) Upon police

---

[7] See Sentencing Tr. at 239-40.

[8] See Tr. at . 432 (counsel Alphonse Perkins stating "no cross").

[9] See Resp. Ex. M at 224 (Renegar's letter, dated May 10, 2007), 225-26 (Renegar's Official Statement).

arriving at the house, Defendant fled into the interior of the house, barricading himself with another individual, Daniel Barrs. (Ex. E at 213-14, 218-19, 221, 258-63, 274, 288-92, 299-300, 391-96, 445-54.) Mr. Barrs gave himself up and was detained after walking out the front door, but Defendant remained hunkered down in the house. (Ex. E at 221-24, 263, 274-75, 419, 451.) Defendant eventually tried to escape via a window, but was spotted by two police officers, so Defendant quickly retreated back into the house, but not before he dropped a bag from his hand. (Ex. E at 225-229, 242, 249, 396-400, 453-59, 481.) Inside the bag were two guns, 75.9 grams of marijuana, 50.2 grams of cocaine (both crack and powder), thirteen ecstasy pills, plastic bags, a scale, scissors, a cellphone pamphlet with a phone number written on it, and a cigar. (Ex. E at 228-30, 264, 302-10, 346-55, 370, 383-84, 401, 404-05.)

During the standoff, Defendant made comments to Officers Bridgeman and Seymour who were stationed near the rear of the house. At the window where two officers observed Defendant trying to escape, Defendant began yelling while holding a cellphone. (Ex. E at 238-40.) Defendant yelled that he did not want to go to jail, he wanted to speak to his mother, he was going to commit suicide, he had a weapon with fifty rounds of ammunition, he was not coming out alive, and that the police would have to take him out. (Ex. E at 238-40, 250-52, 480.)

Near the front of the house, Defendant made contact with another officer, Officer Rollo. (Ex. E at 270-72.) Defendant told Officer Rollo that he was going to kill himself. (Ex. E at 271.) Officer Rollo had positioned himself behind a tree with his service firearm drawn. (Ex. E at 271-72.) Defendant saw Officer Rollo's firearm and stated to him that "I've got something for you. I've got one of those too." (Ex. E at 271-72.) The SWAT team eventually arrived, at which point Defendant voluntarily left the house and the officers arrested him. (Ex. E at 241-42, 273, 288-93, 403, 472.) Notably, the SWAT team cleared the house and found no other individual inside the house. (Ex. E at 293, 485.)

Based on the above, even without the cellphone records linking Defendant to calls made during the stand-off[], there was ample evidence to convict Defendant of Counts One through Three. Defendant was seen in possession of the bag containing the firearms, drugs, and trafficking

paraphernalia. Moreover, once Mr. Barrs left the residence, Defendant was the only individual left in the residence, rendering it impossible for anyone other than him to have made those calls inside the house. (Ex. E at 293, 485.) Accordingly, had the State not introduced the cellphone records, there is no reasonable probability the outcome of the trial would have [been] different. As Defendant cannot satisfy the prejudice prong of Strickland, he is not entitled to relief on Ground One.

. . . .

Defendant claims counsel was ineffective for failing to investigate, interview, and call Victoria Cain as a witness. Defendant alleges Ms. Cain was willing and available to testify on Defendant's behalf. According to Defendant, Ms. Cain would have testified that she dropped Defendant off on Mark Avenue and when he exited her car, Defendant was carrying only a cup and submarine sandwich bag. Furthermore, Ms. Cain would have testified that she was talking with an individual named "D" on the phone, not Defendant.[10] Ms. Cain's testimony, Defendant asserts, would have refuted the State's contentions that Defendant was on the phone with Ms. Cain, which would have created a[] reasonable doubt in the minds of the jurors as to who committed the crimes.

For the reasons explained in the Court's analysis of Ground One, which the Court hereby incorporates into its analysis of Ground Five, Defendant cannot demonstrate prejudice, and, therefore, he is not entitled to relief on Ground Five. See Pagan v. State, 29 So. 3d 938, 948-49 (Fla. 2009) (quoting Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) ("'A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.'").

Resp. Ex. M at 237-39, 243-44 (footnote omitted). The appellate court affirmed the circuit court's denial of relief per curiam without issuing a written opinion. Resp. Ex. P.

_____

[10] See Resp. Ex. M at 230, Cain's Statement ("I contacted Byron's attorney, Sissy Adams-Jones, to let her know I would testify for Byron, but she told me no because I was a victim of his in the domestic violence case.").

To the extent that the appellate court decided the claims on the merits,[11] the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McClendon is not entitled to relief on the basis of these claims.

Nevertheless, even if the appellate court's adjudication of these claims is not entitled to deference, grounds one and four are without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. <u>See</u> <u>Anderson v. Sec'y, Fla. Dep't of Corr.</u>, 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" <u>Rompilla v. Beard</u>, 545 U.S. 374, 381 (2005). Thus, McClendon must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514

---

[11] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1192.

(11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, McClendon has failed to carry his burden of showing that his counsels' representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, McClendon has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as McClendon claims they should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, McClendon is not entitled to federal habeas relief on grounds one and four.

### B. Ground Two

As ground two, McClendon asserts that counsel was ineffective because she failed to object to Officer Santoro's testimony about McClendon's multiple run-ins with law enforcement, and she failed to request that the court instruct the State and its witnesses not to disclose their familiarity with McClendon. See Petition at 7-8 (referencing Tr. at 298). According to McClendon, the trial judge would have given a curative instruction or granted a mistrial if counsel had objected. See id. at 8. McClendon raised the claim in his second amended Rule 3.850 motion in state court. Resp. Ex. M at 197-200. The circuit

court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> Defendant contends his counsel was ineffective for failing to object and request the Court to instruct the State and its witnesses to not disclose their familiarity with Defendant. Specifically, he claims counsel should have objected to Officer Richard Santoro's testimony that Defendant had multiple run-ins with law enforcement. Defendant argues that the jury easily inferred from this testimony that Defendant had a prior record and had been involved in other criminal activity. Had counsel objected, Defendant claims a curative instruction would have been read or a mistrial would have been granted.
>
> The record reflects that counsel did object to this testimony via [a] motion in limine prior to trial. (Ex. F.) Upon hearing argument concerning the motion, the Court ruled that the State could elicit testimony involving only police/citizen contact prior to the incident and could not elicit testimony regarding prior unrelated investigations or arrest[s]. (Ex. E at 181-83.) Officer Santoro testified at trial that he knew Defendant and his parents because of non-law-enforcement and normal police/citizen interactions, not because of prior investigations or arrests. (Ex. E at 298-99.) Accordingly, the record refutes Defendant's allegation that counsel did not object to these statements and the record demonstrates that the witness complied with the Court's Order. Furthermore, the Court's decision to deny the motion in part demonstrates that the Court would not have issued a curative instruction or granted a mistrial [if] counsel objected to Officer Santoro's trial testimony. As the record refutes Defendant's claim of deficient performance and prejudice, Defendant is not entitled to relief on Ground Two.

Resp. Ex. M at 239-40. The appellate court affirmed the circuit court's denial of relief without issuing a written opinion. Resp. Ex. P.

To the extent that the appellate court decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McClendon is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, ground two is without merit. The record reflects that McClendon, with the benefit of counsel, filed a motion in limine, asking the court to prohibit the State from introducing any evidence relating to or testimony "that [McClendon] was known by any officer due to prior contact." Resp. Ex. A at 86-87, Defendant's Sixth Motion in Limine. Prior to trial, the court addressed the motion, and the following colloquy ensued:

> [PROSECUTOR]: Judge, one of the officers who patrols the area, Officer Santoro, has patrolled that area for nine years. He's had simple police/citizen contact with the defendant, would see him out there, talk to him, actually knew where his parents live.
>
> And the only evidence that we would introduce through that is just that, yes, he knew him through just patrolling the area, not in reference to any arrest or anything like that, and - because he's the one - whenever they received the call that Mr. McClendon had an active warrant, he was the one who knew who he was, so he knew where to go.
>
> And he will testify that this is just based on knowing him from being in that neighborhood, talking to him out there on the street sometimes, nothing related to any official police functions.
>
> THE COURT: I think he can testify that he knew him as long as he's not testifying to any prior official contact regarding any prior crimes –
>
> [PROSECUTOR]: Right.
>
> THE COURT: -- warrants, capiases.

[PROSECUTOR]: No. It's just police/citizen contact.

THE COURT: **Okay. With that understanding, that it's limited to that, I'll deny the motion.**

[DEFENSE COUNSEL]: I'm sorry, Judge. Would you state that again? I didn't understand what you said.

THE COURT: **With the understanding that the only testimony will involve police/citizen contact prior to this incident, not any contact regarding investigations or arrests or anything of that nature prior to this incident.**

[PROSECUTOR]: Correct.

THE COURT: **Then that would be admissible, but nothing more.**

Tr. at 181-83 (emphasis added).

At trial, the prosecutor elicited the following testimony from Officer Santoro.

Q      Now, you testified you're familiar with the Golf 3 subsector area of Philips Highway area on your beat; is that right?

A      It would be Golf 1 area, yes.

Q      Golf 1. I'm sorry. And are you familiar with the residents of this area?

A      Yes.

Q      And prior to March 28th, 2006, just in a nonlaw-enforcement function, did you ever see the defendant in this area or have any contact with him?

A      Yes, I did.

Q      Okay. Do you know whether or not his parents live in this area?

A      They live off Mark.

Q      Okay. Which is in that general location?

18

> A       Yes.
>
> Q       Did you ever have any simple police/citizen contact with him in that area?
>
> A       Yes, I have.
>
> Q       So prior to March 28th, 2006, you were familiar with his face?
>
> A       Yes.

Tr. at 298-99. The prosecutor and Officer Santoro complied with the state court's ruling on the motion in limine, and limited the testimony to unofficial police/citizen contact related to knowing McClendon and his parents and seeing McClendon in the neighborhood.

On this record, McClendon has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, McClendon has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to Officer Santoro's testimony. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, McClendon is not entitled to federal habeas relief on ground two.

### C. Ground Three

Next, McClendon asserts that counsel was ineffective because she failed to object to the standard jury instruction when a special jury instruction on joint possession was needed. See Petition at 10-12. McClendon raised the claim in his second amended Rule 3.850 motion in state court. Resp. Ex. M at 203-09. The circuit court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

Defendant alleges counsel was ineffective for failing to object to the use of the standard jury instruction for "joint possession" when a special jury instruction was needed. According to Defendant, the standard jury instruction for joint possession did not cover the facts of the case, in that Defendant was not in exclusive possession of the premises where police recovered the contraband. Citing Mitchell v. State, 958 So. 2d 496 (Fla. 4th DCA 2007),[12] Defendant argues that where possession of the premises is joint, the standard jury instruction for constructive possession is erroneous. As Defendant disputed he possessed the guns and drugs, he claims that the jury's determination that he possessed these items must be based on more than his access to a joint residence.

Defense counsel "cannot be held ineffective for failing to anticipate the change in the law." Nelms v. State, 596 So. 2d 441, 442 (Fla. 1992) (citing Stevens v. State, 552 So. 2d 1082, 1085 (Fla. 1989)). Even assuming Defendant's argument is correct, the Fourth District Court of Appeal issued the Mitchell decision on May 30, 2007, which was after the jury returned a guilty verdict on March 21, 2007 in the instant case. Mitchell, 958 So. 2d 496. Accordingly, counsel cannot be deemed ineffective for failing to raise an argument based on Mitchell. Nelms, 596 So. 2d 442.

Moreover, the drugs and firearms were recovered in a bag, not a home; therefore, the issue of possession revolves around who possessed the bag. In Mitchell, police entered a home and discovered several plastic baggies of marijuana, a large amount of marijuana, a bag of cocaine, a large amount of cash, and an electronic scale. Mitchell, 958 So. 2d 497. Based upon evidence questioning whether or not the home was [Mitchell]'s residence, "Mitchell's counsel requested a special jury instruction on constructive possession where the contraband is found on jointly possessed premises." Id. at 498 (emphasis added).

---

12 In Mitchell, the Fourth District Court of Appeal held that a special jury instruction was necessary in order to present Mitchell's theory of defense. See Mitchell, 958 So. 2d at 500-01 ("The standard jury instruction does not explain what must be proved where possession of the premises is in joint rather than exclusive possession of the defendant. The specially-requested instruction, unlike the standard instruction, instructs the jury that the elements of knowledge and ability to control may not be inferred from the mere fact of joint possession of premises where contraband is found, but must be established by independent proof.").

> In the case at bar, two officers observed Defendant attempting to crawl out of a window. One officer specifically viewed Defendant with the bag of guns and drugs in his hand,[13] while the other heard the bag fall to the ground and saw its final landing place on the ground beneath the window from which Defendant was attempting to escape. (Ex. E at 225-229, 242, 249, 396-400, 453-59, 481.) Accordingly, the requested jury instruction in Mitchell is inapplicable to the facts of this case, because the guns and drugs were not found in the premise[s] but in the bag Defendant dropped out of the window. Therefore, the Mitchell instruction would not have been proper to read to the jury in the case at bar and the standard jury instructions on possession were proper.[14] Counsel cannot be deemed ineffective for failing to raise a meritless argument. Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008). Accordingly, as Defendant has failed to demonstrate either deficient performance or prejudice, Defendant is not entitled to relief on Ground Four.

Resp. Ex. M at 242-43 (footnote omitted). The appellate court affirmed the circuit court's denial of relief without issuing a written opinion. Resp. Ex. P.

To the extent that the appellate court decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[13] Officer Bridgeman testified: "When I opened up the bag I saw two firearms, two handguns, and I saw what appeared to be marijuana, cocaine, and some pills." Tr. at 230. Officer Seymour testified that she glanced into the bag and saw two guns, some marijuana and pills. Id. at 401.

[14] See Tr. at 550-62.

the evidence presented in the state court proceedings. Thus, McClendon is not entitled to relief on the basis of this claim.

Even if the appellate court's adjudication of this claim is not entitled to deference, ground three is still without merit. On this record, McClendon has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, McClendon has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had objected to the standard jury instruction. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.[15] Accordingly, McClendon is not entitled to federal habeas relief on ground three.

### D. Ground Five

Next, McClendon asserts that counsel was ineffective because she failed to file a motion to suppress the evidence found in the bag. See Petition at 16-17. McClendon raised the claim in his second amended Rule 3.850 motion in state court. Resp. Ex. M at 214-16. The circuit court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> Defendant argues his counsel was ineffective for failing to file a motion to suppress all evidence retrieved from the bag. According to Defendant, the following three reasons supported suppression of this evidence: (1) officers discovered the bag in a fenced, enclosed area, which is the curtilage of the home and protected by the Fourth

---

[15] McClendon, with the benefit of counsel on direct appeal, asserted that the trial court fundamentally erred when it used the standard jury instruction. See Resp. Exs. G at 13-14, 17-20; I at 2-5. The appellate court affirmed McClendon's conviction and sentence per curiam without issuing a written opinion, see Resp. Ex. J, and denied McClendon's motion for written opinion and certification, see Resp. Ex. K.

Amendment; (2) the officers violated the plain view doctrine because the bag was opaque and closed, making it impossible to see the objects inside it; and (3) the bag was not in Defendant's immediate control nor did it pose an immediate threat. Had counsel filed a motion to suppress on these grounds, Defendant avers that the State would not have had evidence to prosecute him.

An ineffective assistance of counsel claim arising out of a failure of counsel to file a motion to suppress requires a Defendant to prove his Fourth Amendment claim is meritorious. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); see also Kormondy v. State, 983 So. 2d 418, 430 (Fla. 2007) (holding a defense counsel's failure to file a motion to suppress is not ineffective assistance of counsel if the motion to suppress would not have been granted if filed). The United States Supreme Court has held that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." U.S. v Santana, 427 U.S. 38, 43 (1976). Furthermore, "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger." Michigan v. Long, 463 U.S. 1032, 1049 (1983).

The record reflects Defendant had an active warrant for his arrest and police were called to the scene to execute that warrant. (Ex. E at 210-11, 258-59, 292, 299-300, 387-88.) Upon seeing the police, Defendant fled into a private residence. (Ex. E at 213-14, 218-19, 221, 258-63, 274, 288-92, 299-300, 391-96, 445-54.) Officers retrieved and searched the bag because they feared Defendant may try to escape again through the window and potentially arm himself with firearms in the bag. (Ex. E at 228-30, 323-24, 400-02.)

Accordingly, exigent circumstances, in the form of a hot pursuit, occurred in the case at bar, thus obviating a need for a warrant. Santana, 427 U.S. at 43. Officers were constitutionally permitted to be in the curtilage of the home here; therefore, the presence of the bag inside a fenced yard would not have been a meritorious suppression argument. Furthermore, because an active warrant was out on Defendant and he fled the police, barricading himself inside the home, the officers had an articulable and reasonable fear of danger that would allow them to search the bag. Long, 463 U.S. at 1049. Counsel is not ineffective for failing to make a suppression argument with no merit. Kimmelman, 477 U.S. at

> 375.    Defendant has failed to demonstrate deficient
> performance or prejudice; therefore, he is not entitled to relief
> on Ground Seven.

Resp. Ex. M at 246-47. The appellate court affirmed the circuit court's denial of relief without issuing a written opinion. Resp. Ex. P.

To the extent that the appellate court decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, McClendon is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of this claim is not entitled to deference, ground five is without merit. On this record, McClendon has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, McClendon has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had filed a motion to suppress in the manner he suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance

nor resulting prejudice. Accordingly, McClendon is not entitled to federal habeas relief on ground five.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If McClendon seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, McClendon "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If McClendon appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of September, 2020.


MARCIA MORALES HOWARD
United States District Judge


sc 9/24
c:
Byron McClendon, FDOC #J33632
Counsel of Record